**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


William M. Woodson

   v.                                Civil No. 11-cv-191-JL

John Duffy, Bureau Chief,
New Hampshire Department of
Health and Human Services,
Division for Juvenile Justice
Services, et al.[1]


**REPORT AND RECOMMENDATION**


William Woodson has filed a complaint (doc. no. 1) pursuant to 42 U.S.C. § 1983, alleging that the defendants subjected him to race and age discrimination when he was terminated from his employment with the New Hampshire Department of Health and Human Services' ("DHHS") Sununu Youth Services Center ("SYSC") on July 13, 2009.[2]  Because Woodson is proceeding pro se and in forma pauperis, the matter is before the court for a preliminary

---

[1]Also named in the complaint as defendants to this action are Nicholas Toumpas, Commissioner of the New Hampshire Department of Health and Human Services ("DHHS") and DHHS Director William W. Fenniman, Jr.

[2]Woodson has attached several documents to his complaint. The documents will be considered to be part of the complaint for all purposes.  See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

review to determine whether the complaint states any claim upon
which relief might be granted.  See 28 U.S.C. § 1915(e)(2);
United States District Court for the District of New Hampshire
Local Rule ("LR") 4.3(d)(1)(B).[3]

## Standard of Review

Under LR 4.3(d)(1)(B), when a plaintiff commences an action
pro se and in forma pauperis, the magistrate judge conducts a
preliminary review.  The magistrate judge may issue a report and
recommendation after the initial review, recommending that
claims be dismissed if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See id. (citing 28 U.S.C. § 1915(e)(2)
& Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary
review, the magistrate judge construes pro se pleadings
liberally, to avoid inappropriately stringent rules and
unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94

_____

[3]Defendants have filed a motion to dismiss the complaint
(doc. no. 5).  Plaintiff objects (doc. no. 6).  That motion has
been referred to this magistrate judge for consideration and for
proposed findings and recommendations (doc. no. 12).  At this
time, the court defers consideration of that motion pending the
District Judge's consideration of this report and
recommendation.

(2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97,
106 (1976), to construe pleadings liberally in favor of pro se
party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous
to that used in reviewing a motion to dismiss filed under Fed.
R. Civ. P. 12(b)(6).  The court decides whether the complaint
contains sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face.  See Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged
approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,
12 (1st Cir. 2011).  The court first screens the complaint for
statements that "merely offer legal conclusions couched as fact
or threadbare recitals of the elements of a cause of action."
Id. (citations, internal quotation marks and alterations
omitted).  A claim consisting of little more than "allegations
that merely parrot the elements of the cause of action" may be
dismissed.  Id.  The second part of the test requires the court
to credit as true all non-conclusory factual allegations and the
reasonable inferences drawn from those allegations, and then to
determine if the claim is plausible.  Id.  The plausibility

requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits."  Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

4

**Background**

Plaintiff William Woodson is a sixty-two year old African-American man who was formerly employed by the State of New Hampshire as a Youth Counselor working at the SYSC.[4]  Woodson began his employment with the State of New Hampshire on March 11, 1995.  During the times relevant to this action, Woodson's job was to serve as a counselor to juveniles committed to the SYSC through the state's juvenile justice system.

On November 5, 2008, Woodson noticed that T.H., a boy living on the unit where Woodson worked, appeared to be upset or hurt.  Woodson spoke with T.H., who reported to Woodson that T.H. had engaged in horseplay with John Gonyer, a staff member on the unit, and that during the horseplay, Gonyer had kneed T.H. in the groin.  Woodson asked T.H. if he needed medical assistance, and T.H. replied that he did not.

Woodson was not on the unit when the horseplay occurred and did not have firsthand knowledge of the incident.  Woodson spoke with Gonyer and told him that Gonyer should speak with T.H.

_____

[4]The SYSC was formerly known as the Youth Development Center or "YDC," and prior to that, as the Youth Detention Services Unit or "YDSU."  All of those names and acronyms appear in the filings in this matter.  The court refers to the "SYSC" for the sake of clarity, although during events relevant to this action, the facility may have been known by one or more of its previous names.

Gonyer told Woodson that he did engage in horseplay with T.H. and knew that he had kneed or kicked him, but that T.H. had told Gonyer that he had only received a "charlie horse" in the thigh, and that T.H. did not say that he had been kneed in the groin.

Woodson did not seek medical attention for T.H. and did not report the incident to his shift supervisor or to anyone else. Woodson felt that it was Gonyer's duty to report the incident, but did not follow-up to see that Gonyer had done so.

T.H. sought medical attention for a bruising injury in his groin area a few days later.  When T.H.'s injuries were discovered by the doctor, an investigation by the New Hampshire Department of Health and Human Services commenced.  As part of the investigation, Woodson, Gonyer, T.H., and other employees on the unit, including James Cohen, were interviewed.

When the investigation was concluded, John Duffy, Bureau Chief of the DHHS' Division for Juvenile Justice Services, sent Woodson an "Intent To Dismiss" letter on June 29, 2009.  In that letter, Duffy advised Woodson of the grounds for his dismissal, which included: (1) Woodson endangered the health and/or safety of an individual served by DHHS by failing to report the assault and injury to T.H. to appropriate supervisory and medical staff; (2) Woodson violated DHHS policy by failing to report Class I

abuse of T.H.; (3) Woodson's failure to report the serious
injury to T.H. to appropriate supervisory or medical staff
constituted an act of Class I Neglect, and was in violation of
DHHS Policy; and (4) Woodson failed to conduct himself "with
competence and professionalism in the performance of [his]
employment-related responsibilities and failed to competently
perform those job responsibilities" as set forth in his job
description.  The "Intent To Dismiss" letter advised Woodson
that he had the opportunity to appear at a July 2, 2009, hearing
to contest the findings in the letter.

On July 13, 2009, Duffy sent Woodson a "Dismissal From
Employment" letter.  That letter reiterated the grounds for
dismissal laid out in the "Intent to Dismiss" letter and advised
Woodson that his employment would be terminated effective July
13, 2009.  The letter further advised Woodson that he had a
right to an administrative appeal and provided instructions to
initiate such an appeal.  The complaint does not state whether
Woodson exercised his right to administratively appeal his
termination.

Woodson takes issue with certain factual findings Duffy
made after investigating the incident with T.H. Woodson does not
dispute, however, that T.H. reported to Woodson that Gonyer

kneed him in the groin during horseplay, or that Woodson did not report the incident to any supervisor or medical professional.

Woodson alleges that Duffy has a history of discrimination and prejudice against African-Americans.  Woodson states that on two occasions, a Caucasian SYSC employee, James Cohen, assaulted a juvenile resident and was protected from termination by Duffy due to the friendship between Cohen and Duffy.  Woodson asserts, and has submitted performance reviews that support his assertion, that since beginning his employment at the SYSC in 1995, he has met virtually all of the expectations of his position and has generally been a good employee and an asset to the facility.  Based on these facts, Woodson concludes that his termination was motivated by prejudice against him due to his race and his age.

**Discussion**

I.   Racial Discrimination

A.   Equal Protection

Woodson alleges that his Fourteenth Amendment equal protection rights were violated when he was terminated because he is African-American.  "To prevail on a claim of racial discrimination in violation of the Equal Protection Clause, a plaintiff must establish (1) that he was selected for adverse

treatment compared with others similarly situated, and (2) that
the selection for adverse treatment was based on his race."
Rios-Colon v. Toledo-Davila, 641 F.3d 1, 4 (1st Cir. 2011).  The
court conducting preliminary review must decide if Woodson has
stated sufficient facts to allege, or to allow the court to
infer plausibly, that he can satisfy the requirements of an
equal protection claim.  See Iqbal, 556 U.S. at ___, 129 S. Ct.
at 1949.

The only fact Woodson alleges in support of his assertion
that he was selected for adverse treatment is that he was
terminated after one act of wrongdoing while Cohen, who is
Caucasian, twice committed acts worse than that for which
Woodson was fired.  Woodson states, however, that Duffy's
failure to terminate Cohen was based on their friendship, not
Cohen's race.

Woodson alleges no facts at all to support, or that would
allow the court to infer reasonably, the truth of his bald
assertion that Duffy has a history of discriminating against
African-American people.  Nothing in the complaint provides any
factual support for Woodson's assertion that his firing was in
any way racially motivated.  Without any such facts alleged,
Woodson fails to state an equal protection claim based on racial

discrimination, and that claim should be dismissed from this action.

    B.   <u>Title VII</u>

Although Woodson does not specifically assert a claim under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq.</u> ("Title VII"), the court can construe the complaint generously to assert such a claim.  Title VII prohibits employment discrimination on the basis of race where race "was a motivating factor in any employment practice."  42 U.S.C. §§ 2000e-2(a), (m). Accordingly, Woodson's claim that Duffy fired him because Duffy is prejudiced against African-Americans may arise under Title VII.

Title VII claims must be exhausted administratively before a federal suit can be filed.  <u>See</u> <u>Siaca v. Autoridad de Acueductos y Alcantarillados de P.R.</u>, 160 F. Supp. 2d 188, 195 (D.P.R. 2001) (citing <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 277 (1st Cir. 1999)).  The complaint is silent as to whether Woodson pursued and exhausted such administrative remedies in this matter.

Whether or not such exhaustion occurred, however, any Title VII claim asserted by Woodson is subject to dismissal for the same reason his equal protection claim fails -- the assertions

in the complaint fail to state any facts to support any
plausible claim that his firing was based on racial
discrimination.  Accordingly, the complaint fails to state an
actionable Title VII claim upon which relief might be granted.

II.  Age Discrimination

Woodson asserts that he was subjected to age discrimination
when, as a sixty-two year old man, he was fired.  Although
Woodson asserts his claim under the Fourteenth Amendment right
to equal protection, the exclusive remedy for an age
discrimination claim in the employment context is the Age
Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.
("ADEA").  See Tapia-Tapia v. Potter, 322 F.3d 742, 745 (1st
Cir. 2003).[5]  The ADEA makes it unlawful for an employer "to fail
or refuse to hire or to discharge any individual or otherwise

---

[5]To pursue an ADEA claim, a plaintiff must timely exhaust
administrative remedies.  See De Los Santos v. UBS Fin. Servs.,
Inc., No. 09-1168 (JP), 2010 WL 936150, *3 (D.P.R. Mar. 12,
2010) (citing Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d
74, 77 (1st Cir. 1997) ("exhaustion of administrative remedies
is absolutely required if explicitly mandated by congress")).
The complaint here is silent as to whether Woodson pursued or
exhausted administrative remedies concerning his age
discrimination claim.  The exhaustion requirement, while
mandatory, is not jurisdictional.  See Siaca v. Autoridad de
Acueductos y Alcantarillados de P.R. 160 F. Supp. 2d 188, 195
(D.P.R. 2001) (citing Zipes v. Trans World Airlines, Inc., 455
U.S. 385, 393 (1982)).  The court need not determine whether the
matter has been exhausted, therefore, to find that the complaint
contains no allegations to support relief.

discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).

Woodson's age discrimination claim fails as inadequately stated.  Aside from his assertion that he is sixty-two years old, there are no facts in the complaint that suggest any relationship between Woodson's age and his termination from employment.  Accordingly, Woodson has failed to state facts to support a plausible challenge to his termination based on age discrimination.

## Conclusion

For the foregoing reasons, the court finds that Woodson has failed to state any claim upon which relief might be granted and recommends dismissal of the complaint in its entirety.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011) (citing United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to

review by district court; issues not preserved by such objection
are precluded on appeal).

                                   _____

                                   Landya McCafferty
                                   United States Magistrate Judge

December 20, 2011

cc:  William M. Woodson, pro se
     Nancy Smith, Esq.

LBM:jba

13